IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **MICHAEL J. FREE** | : | **Bankruptcy No. 10-25460-BM** |
| d/b/a **ELECTRA LIGHTING &** | : | |
| **ELECTRIC COMPANY,** | : | |
| Debtor. | : | **Chapter 7** |
| | : | |
| **Michael J. Free** | : | |
| d/b/a Electra Lighting & | : | |
| Electric Company, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Adversary No. 10-2481-BM** |
| | : | |
| **S & T Bank**, | : | |
| Defendant. | : | |

Appearances:   David A. Colecchia, for Michael J. Free.
Justin L. McCall, for S & T Bank.
James R. Walsh, for the Chapter 7 Trustee.

## MEMORANDUM OPINION

Michael J. Free d/b/a Electra Lighting & Electric Company, the above-captioned debtor and the instant plaintiff (hereafter "the Debtor"), brings the instant adversary action primarily to avoid as preferential under 11 U.S.C. § 547(b) the transfers of two discrete parcels of real property to S & T Bank, the instant defendant (hereafter "the Bank"). The transfers in question occurred by virtue of the Bank's pre-petition purchase of such parcels of realty at regularly-conducted, non-collusive sheriff's sales.

The Bank now moves to dismiss the Debtor's complaint. For the reasons that are set forth below, the Court shall grant such motion to dismiss by the Bank.

## STATEMENT OF FACTS

The Debtor commenced the instant bankruptcy case on July 30, 2010, by filing a Chapter 13 bankruptcy petition. The instant case was subsequently converted to one in Chapter 7 by court order dated February 1, 2011. The Debtor had previously filed a Chapter 13 bankruptcy case on February 28, 2010, which case was subsequently dismissed without prejudice on April 7, 2010, because of the Debtor's failure to timely file required documents with the Court.

In December 1998 the Debtor obtained a loan from the Bank in the principal amount of $433,000.00. Such loan was secured by mortgages on two parcels of realty located at, respectively, (a) 10561 and 10563 Center Highway, North Huntingdon, PA (hereafter "the North Huntingdon Property"), and (b) 3820 William Penn Highway, Monroeville, PA (hereafter "the Monroeville Property"). On May 11, 2009, the Bank obtained judgments in mortgage foreclosure against the Debtor on both of the aforesaid parcels of realty (hereafter "the Debtor's Realty"). Said judgments in mortgage foreclosure have not been stricken or opened in the state courts.

The parties agree that on May 3, 2010, the Bank purchased the North Huntingdon Property via a sheriff's sale, and that the Bank paid the state court costs and taxes for such realty in an amount of at least $6,543.91.[1] On May 27, 2010, the Bank obtained a deed from the Sheriff's Office for the North Huntingdon Property, which deed was then recorded on June 24, 2010.

---

[1] The parties disagree as to the precise amount that the Bank paid at the sheriff's sale for the North Huntingdon Property, but they agree that such amount equalled at least $6.543.91.

The Bank contends that it also purchased the Monroeville Property via a sheriff's sale on May 3, 2010, and that it paid the state court costs and taxes in the amount of $1,689.12 for such realty. However, the Sheriff's Office deed that the Bank obtained on May 12, 2010, for the Monroeville Property indicates that the date of the sheriff's sale that pertained to such realty was March 3, 2010, rather than May 3, 2010. The Bank ultimately recorded such deed on May 21, 2010. Because of what such deed indicates relevant to the date of the sheriff's sale of the Monroeville Property, the Debtor now contends that such realty was actually purchased by the Bank on March 3, 2010. The Bank contends that such deed merely contains a clerical mistake regarding the date of such sheriff's sale. In support of such position, the Bank attaches to the instant motion to dismiss an affidavit from the Sheriff's Office stating that the date of such sheriff's sale was May 3, 2010, and that the March 3, 2010 date was inserted into such deed by virtue of a clerical mistake.

Presently pending in the Pennsylvania state courts are ejectment proceedings commenced by the Bank against the Debtor with respect to both the Monroeville Property and the North Huntingdon Property. The Bank also moved for relief from the automatic stay in this Court so that it may proceed with such pending eviction actions. The Bank's stay relief motion was ultimately granted on March 3, 2011, by Consent Order of Court. The order granting such stay relief is denoted as a consent order because James R. Walsh, who is the instant Chapter 7 Trustee (hereafter "the Trustee"), consented to such stay relief motion. *See* Trustee's Response and Consent, Docket No. 92 (entered 2/23/11), at ¶ 15. The

Trustee so consented because "it is the Trustee's opinion that the interest of the [Debtor's] Bankruptcy Estate in the real properties in question, if any, will not result in any realization of funds for the distribution to any unsecured creditor." Id.

The Bank contends that, as of March 1, 2010, the outstanding balance owed by the Debtor on the loan that was secured by the ultimately-foreclosed mortgages on the Debtor's Realty equalled $585,517.76. The Debtor disputes the amount of such balance, but fails to disclose what he contends is the amount of such balance. According to the Debtor's Bankruptcy Schedule D, however, which schedule was filed with the Court on August 20, 2010, the Debtor scheduled such claim of the Bank at $655,079.42.

The Debtor contends that the Monroeville Property and the North Huntingdon Property are presently worth $1,282,000.00 collectively, and the Debtor valued such properties collectively at $1,260,000 in his Bankruptcy Schedule A. The Bank disputes the Debtor's valuation of such properties, and contends that the Debtor has significantly overstated the value of such properties. The Debtor contends that the Bank has located a buyer for the Monroeville Property, and that such buyer is willing to pay $600,000 for such property.

## **DISCUSSION**

The Debtor, in Count 1 of his adversary complaint, contends that the sheriff's sales of the Debtor's Realty to the Bank constitute avoidable preferential transfers. In his Count 2, the Debtor contends that the Bank violated the

4

automatic stay that emanated from the Debtor's prior, and since-dismissed, bankruptcy case on the basis that (a) the sheriff's sale of the Monroeville Property to the Bank occurred on March 3, 2010, (b) such stay was in place from February 28, 2010, until April 7, 2010, and (c) such sale occurred without the grant of relief from such stay.

The Bank, as one would expect, disagrees with both of the Debtor's foregoing contentions. Moreover, the Bank now moves to dismiss both counts of the Debtor's complaint, contending that (a) the two sheriff's sales of the Debtor's Realty do not constitute preferential transfers, and (b) the sheriff's sale of the Monroeville Property to the Bank occurred on May 3, 2010.

**I.** **Whether the sheriff's sales constitute preferential transfers?**

11 U.S.C. § 547(b) provides, in pertinent part, that:

> the trustee may avoid any transfer of an interest of the debtor in property —
>
> > (1) to or for the benefit of a creditor;
> >
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> >
> > (3) made while the debtor was insolvent;
> >
> > (4) made —
> >
> > > (A) on or within 90 days before the date of the filing of the petition; or
> > >
> > > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time

5

of such transfer was an insider; and

  (5)  that enables such creditor to receive more than such creditor would receive if —

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 2011).

At the outset, the Court concludes, and the parties agree, that the sheriff's sales constituted, or effected, a transfer to the Bank of an interest of the Debtor in both the Monroeville Property and the North Huntingdon Property. The Court concludes as it does because the Court agrees with the Debtor that (a) such sheriff's sales legally operated to foreclose the Debtor's equity of redemption in the Debtor's Realty, (b) such equity of redemption constitutes an interest of the Debtor in such realty, and (c) such foreclosure thereof constitutes a transfer of such interest, *see* 11 U.S.C.A. 101(54)(C) (West 2011). Therefore, the threshold requirement under § 547(b) that the sheriff's sales constituted, or effected, a "transfer of an interest of the debtor in property" is satisfied. However, the Bank contends that the Debtor cannot establish two of the other elements of a preference action under § 547(b), namely the elements set forth in § 547(b)(1) and (b)(5).

The Bank contends that the Debtor cannot satisfy § 547(b)(1) because, contends the Bank, the sheriff's sales were made to the Bank not in its capacity

as a creditor of the Debtor (i.e., "*qua* creditor") but rather in its capacity as a mere purchaser of the Debtor's Realty (i.e., "*qua* purchaser"). This Court has previously rejected just such an argument in In re Pulcini, 261 B.R. 836, 843-44 (Bankr.W.D.Pa. 2001) ("Such reasoning appears to be nothing more than a contrivance that was designed to support the court's 'gut feeling' that § 547(b) should not apply ..."). The Court affirms its prior decision in Pulcini in that regard and thus rejects such argument by the Bank in the instant matter.

The Bank also contends that the Debtor cannot satisfy § 547(b)(5) because, contends the Bank, the sheriff's sales did not thereby enable the Bank to receive more on its pre-petition claim against the Debtor than it would have had such sheriff's sales not been conducted and the Bank instead had received payment by way of a hypothetical Chapter 7 liquidation. The Debtor contends that the Bank necessarily so received more and, consequently, that § 547(b)(5) is met because, argues the Debtor, (a) the Debtor's Realty is presently worth much more than what the Bank is owed on its claim against the Debtor, (b) the Bank has even located a buyer for the Monroeville Property who is willing to pay $600,000 for such property, and (c) the North Huntingdon Property is presently worth much more than the difference between $600,000 and the amount of the Bank's claim, presuming *arguendo* that such claim exceeds $600,000 in amount.

The Court must reject the foregoing position by the Debtor regarding § 547(b)(5), however, and regardless of whether the Debtor is correct in its contentions as to the fair market value of the Debtor's Realty and that the Bank has located a buyer who is willing to pay $600,000 for the Monroeville Property.

7

The Court must so rule because, as a matter of law, and for precisely the reasons that are set forth in detail in Pulcini,

> a pre-petition transfer of a debtor's interest in real property to a lien creditor who purchases the property at a regularly-conducted, non-collusive sheriff's sale and who then sells the property to a third party for an amount greater than the amount of its lien is not avoidable in accordance with § 547(b) as a preference. In particular, the lien creditor does *not* "receive more" for purposes of § 547(b)(5) than it would receive in a chapter 7 liquidation.

Id. at 844. Therefore, the Court agrees with the Bank that (a) the sheriff's sales did not thereby enable the Bank to receive more on its pre-petition claim against the Debtor than it would have had such sheriff's sales not been conducted and the Bank instead had received payment by way of a hypothetical Chapter 7 liquidation, and (b) the Debtor cannot satisfy § 547(b)(5) in the instant matter.

Having so ruled on the § 547(b)(5) issue, the Court notes that decisional law exists that disagrees with this Court's prior decision in Pulcini, upon which prior decision, as set forth above, is based this Court's ruling in the instant matter. Such decisional law stands for the proposition that, as a matter of law, the value of property that has been sold pre-petition at a sheriff's sale should be fixed for purposes of § 547(b)(5) at the amount that a trustee would have received for such property if such trustee had instead administered such property for sale. *See, e.g.,* In re Rambo, 297 B.R. 418, 432 (Bankr.E.D.Pa. 2003).

Even accepting as correct such statement of the law in Rambo, when

such law is applied to the instant matter it would not yield a result different from that which has already been reached by the Court. The Court so holds because (a) the Trustee in the instant matter has affirmatively chosen not to administer either parcel of the Debtor's Realty for sale, as evidenced by his consent to the Bank's stay relief motion, which motion was granted on March 3, 2011, by Consent Order of Court, and (b) if a trustee would choose not to administer the asset in question for sale but rather instead would abandon the same or not contest the secured creditor's motion for relief from stay, then such secured creditor, as a matter of law, would not receive more by way of a sheriff's sale purchase of the asset in question than what it would get through a hypothetical Chapter 7 liquidation, see Id. at 435.

Because the Debtor cannot satisfy § 547(b)(5) in the instant matter, his preference action set forth in his Count 1 fails as a matter of law. Therefore, the Court shall dismiss such count on the basis that it fails to state a claim for relief.[2]

---

[2] Because the Court grants the Bank's dismissal motion with respect to the Debtor's Count 1 on the ground that the Debtor, as a matter of law, cannot satisfy § 547(b)(5) and, thus, cannot prevail on his preference action, the Court really need not address the other grounds for dismissal of such count that have been raised by the Bank. Nevertheless, the Court shall address, and then reject, such other grounds briefly in the instant footnote.
    First, the Court rejects the Bank's position that Count 1 must be dismissed on the ground that the Debtor lacked standing to pursue such preference action because (a) the Trustee unquestionably possesses standing to pursue such preference action, (b) the Trustee has indicated a willingness to be substituted as plaintiff in such count in the event that such count would survive the instant dismissal motion, and (c) the Debtor, pursuant to 11 U.S.C. § 522(g) and (h), could pursue such preference action, at least to the extent that he could exempt the realty in question, if the Trustee were to refuse to pursue such action.
    Second, the Court will not dismiss the preference action pled in Count 1 simply on the basis that 11 U.S.C. § 547(b), the statutory preference provision contained in the Bankruptcy Code, cannot be construed to override the longstanding law of Pennsylvania regarding title to real property. This Court's conclusion in Pulcini that § 547(b) cannot be so construed, and its adoption of such conclusion in the instant matter, constitutes a basis for this Court's decision that § 547(b)(5) has not been satisfied, not an independent basis for dismissal of a preference action.
(continued...)

9

## II. Whether the sheriff's sale of the Monroeville Property occurred on May 3, 2010?

As set forth above, the Bank contends that (a) the Sheriff's Office deed that it obtained on May 12, 2010, for the Monroeville Property is incorrect to the extent that such deed provides that the date of the sheriff's sale that pertained to such realty was March 3, 2010, rather than May 3, 2010, and (b) such error is simply the result of a clerical mistake. If the Bank is correct that such deed is so mistaken, and that such sale actually occurred on May 3, 2010, then the Bank will necessarily prevail with respect to the Debtor's Count 2 because, in that event, such sale could not have violated the automatic stay that emanated from the Debtor's prior, and since-dismissed, bankruptcy case given that such stay terminated on April 7, 2010. The Court does not even understand the Debtor to disagree with such analysis. Therefore, does the May 12, 2010 Sheriff's Office Deed contain, as the Bank contends, a clerical mistake regarding when the Monroeville Property was sold to the Bank?

The Bank has attached to the instant motion to dismiss an affidavit from the Sheriff's Office stating that the date of such sheriff's sale was May 3, 2010,

---

[2](...continued)
Third, the Court will not dismiss the preference action pled in Count 1 for lack of subject matter jurisdiction on the ground that such action is barred by the Rooker-Feldman doctrine because (a) the case authority relied upon by the Bank for its position predicated upon the Rooker-Feldman doctrine appears to contain an exception if a bankruptcy trustee is the one that is pursuing an avoidance action, and (b) the Trustee, as set forth above, has indicated a willingness to be substituted as plaintiff in Count 1 in the event that such count would survive the instant dismissal motion.
    Fourth, the Westmoreland County and Allegheny County Sheriffs do not even constitute entities that could be parties to the preference action pled in Count 1, which necessarily means that they also cannot constitute necessary and/or indispensable parties to such action. Therefore, that they have not been joined as parties to such action does not constitute a valid ground for the dismissal of such action.

and that the March 3, 2010 date was inserted into such deed by virtue of a clerical mistake. The Court concludes that such affidavit sufficiently supports the entry of a judgment in the Bank's favor on Count 2 provided that such affidavit is not refuted by the Debtor.

The Court concludes, however, that it cannot dispose of the Bank's motion to dismiss as the same pertains to Count 2 without considering such affidavit. That the Court must consider such affidavit in order to rule in the Bank's favor is significant because, since such dismissal motion is brought under Fed.R.Civ.P. 12(b)(6), and given that such affidavit constitutes a matter outside the pleading that is such motion to dismiss, such motion as the same pertains to Count 2 must be treated as one for summary judgment under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(d), 28 U.S.C.A. (West 2011) (made applicable to the instant adversary proceeding by Fed.R.Bankr.P. 7012(b)). Because the Court converts the dismissal motion as the same pertains to Count 2 into a motion for summary judgment, the Court cannot immediately rule in the Bank's favor on Count 2. Instead, the Court must give the Debtor a reasonable opportunity to defend such converted motion in accordance with Fed.R.Civ.P. 56. *See* Id.

Therefore, the Debtor shall have 21 days from the date of the instant Memorandum Opinion to so counter the affidavit of the Sheriff's Office, after which the Bank will have 14 days to file a reply. If the Debtor fails to timely counter such affidavit in a supported response, then summary judgment regarding Count 2 will automatically be granted in favor of the Bank without any

further hearing or order by the Court.[3]

## CONCLUSION

For all of the foregoing reasons, the Court shall (a) dismiss the Debtor's preference action in Count 1 on the basis that it fails to state a claim for relief, and (b) convert the Bank's dismissal motion as the same pertains to Count 2 into a motion for summary judgment.

**BY THE COURT**

**/s/**
**BERNARD MARKOVITZ,**
**U.S. Bankruptcy Judge**

**DATED:** May 12, 2011

---

[3] The Court's conversion of the Bank's dismissal motion as the same pertains to Count 2 will not affect the Court's dismissal with prejudice at this time of Count 1 as set forth above. Therefore, the substance of any response that the Debtor files to the affidavit as set forth above should be confined to Count 2.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **MICHAEL J. FREE** | : | **Bankruptcy No. 10-25460-BM** |
| d/b/a **ELECTRA LIGHTING &** | : | |
| **ELECTRIC COMPANY,** | : | |
|                  Debtor. | : | **Chapter 7** |
| | : | |
| Michael J. Free | : | |
| d/b/a Electra Lighting & | : | |
| Electric Company, | : | |
|                  Plaintiff, | : | |
| | : | |
|                  v. | : | **Adversary No. 10-2481-BM** |
| | : | |
| **S & T Bank**, | : | |
|                  Defendant. | : | |

## ORDER OF COURT

**AND NOW,** this **12th day** of **May, 2011**, for the reasons set forth in the accompanying Memorandum Opinion of the same date; and subsequent to notice and a hearing on the matter that was held on March 10, 2011, it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

(a)    S & T Bank's dismissal motion is **GRANTED** as the same pertains to Count 1, and thus the Debtor's preference action in Count 1 is **DISMISSED WITH PREJUDICE** on the basis that it fails to state a claim for relief;

(b)    S & T Bank's dismissal motion as the same pertains to Count 2 is **CONVERTED** into a motion for summary judgment;

(c)    the Debtor shall, within 21 days from the date of the instant Order of Court, respond to S & T Bank's reconstituted summary judgment motion

      regarding Count 2, failing which such summary judgment motion will automatically be granted in favor of S & T Bank without any further hearing or order by the Court; and

(d)    S & T Bank shall file a reply within 14 days if, and then after, the Debtor files such a response.

                                  **BY THE COURT**

                                  **/s/**
                                  **BERNARD MARKOVITZ,**
                                  **U.S. Bankruptcy Judge**

copies to:

David A. Colecchia, Esq.
Justin L. McCall, Esq.
James R. Walsh, Esq.
Office of the U. S. Trustee
(to be served electronically by case administrator)